

# THE ATTORNEY GENERAL

# OF TEXAS

Gerald C. Mann
~~JOHN BEN SHEPPERD~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Dan W. Jackson
Criminal District Attorney
Houston, Texas

Dear Sir:

Attention: Hon. W. K. Richardson

Opinion No. O-4533
Re: Can. the county health officer
and/or city health officer
under Article 705c, Penal Code,
demand that an actual Wasserman
or blood test be made for
syphilis, and an actual smear
taken for gonorrhea? And re-
lated questions.

You have requested our opinion on various questions
involving the interpretation of Article 705c of Vernon's Re-
vised Penal Code of 1925. For the purposes of this opinion,
we will quote the applicable provisions of this statute, and
then restate your questions, and answer each in turn:

"Section 1, No person, firm, corporation,
common carrier or association operating, managing,
or conducting any hotel or any other public sleeping
or eating place or any place or vehicle where food
or drink or containers therefor, of any king, is
manufactured, transferred, prepared, stored, packed
served, sold, or otherwise handled in this State, or
any manufacturer or vendor of candies or manufactured
sweets, shall work, employ, or keep in their employ,
in, on or about any said place or vehicle, or have
delivered any article therefrom, any person infected
with any transmissible condition of any infectious
or contagious disease, or work, or employ any person
to work in, on or about any said place, or to deliver
any article therefrom, who, at the time of his or her
employment, failed to deliver to the employer or his
agent, a certificate signed by a legally licensed
physician, residing in the county where said person
is to be employed, or is employed, attesting the fact
that the bearer had been actually and thoroughly
examined by such physician within a week prior to
the time of such employment, and that such examination
disclosed the fact that such person to be employed

was free from any transmissible condition of any infectious or contagious disease; or fail to institute and have made, at intervals of time not exceeing six months, actual and thorough examinations, essential to the findings of freedom from communicable and infectious diseases, of all such employees, by a legally licensed physician residing in the county where said person is employed, and secure in evidence thereof a certificate signed by such physician stating that such examinations had been made of such person, disclosing the fact that he or she was free from any transmissible condition of any communicable and infectious disease.

" . . .

"Sec. 3. All health certificates called for by this Act shall be displayed for public inspection at the place where the person named thereon is employed, and shall not be removed from such place during the continuance of such employment except by a public health officer, his duly appointed agent, or upon valid court order. All such certificates shall bear the employee's signature, the name of the physicians executing examinations and tests, and shall describe the color of eyes, and hair, height, weight, race, sex, age, and date of issuance, and shall be valid for six months only. Public health departments, and local lawmaking bodies, are hereby authorized to establish such further rules, regulations and ordinances as they may deem essential to the execution of the intentions of this Act; providing, however, that all conditions of this Act shall be requisite to all such regulations and ordinances, except, that the said authorities may adopt a plan for the registration of the physicians' certificates required by this Act and in lieu thereof issue a registration card to show that the person named thereon has complied with all of the provisions of this Act; providing further that the said registration card must bear the signature of the person named thereon and shall be displayed for public inspection at the place where such a person is employed.

"Sec. 4. The failure of any person, firm, corporation, common carrier or association engaged in any of the businesses described in this Act, to display at the place where any of the operations of such businesses are being conducted a valid health or registration certificate, as required by this Act, for each person employed in, on, or about such place, shall be prima facie evidence that the said person, firm, corporation, common carrier or association, in violation of requirements called for by this Act, failed to require

the exhibition of the pre-employment health
certificate, of such person and failed to institute
and have made of such person, actual and thorough
examinations necessary to the finds of freedom from
communicable diseases at intervals of time not ex-
ceeding six months.

"Sec. 5. Whoever violates any provision of
this Act shall be fined in an amount not exceeding
Two Hundred Dollars ($200). Each act or ommission in
violation of any of the provisions of this Article,
shall constitute a separate offense and shall be
punishable as hereinabove prescribed.

". . . ."

QUESTION NO. 1: Can the County Health Officer and/
or City Health Officer, under Section 1 of the statute, de-
mand that an actual Wasserman or blood test be made for
syphilis, and an actual smear taken for gonorrhea?

This question is answered in the negative by our
Opinions No. O-213 and No. O-1138, copies of which are
attached hereto.

QUESTION NO. 2: If Question No. 1 is answered
"no", is the physician who issues the certificates without
making the blood test and smear subject to any penalty if
it is later proved that the employee so alleged to have been
examined by said physician actually had syphilis or
gonorrhea at the time of examination?

This question is answered in the negative by our
Opinion No. O-1585, a copy of which is also attached hereto.

QUESTION NO. 3: Under Section 3 above quoted, are
county health officers and/or city health officers authorized
to issue regulations demanding blood tests to determine the
presence of syphilis and smears to determine the presence of
gonorrhea? If they cannot, then what officers or departments
can issue regulations, and could they issue regulations demand-
ing blood tests to determine the presence of syphilis and
smears to determine the presence of gonorrhea?

In view of the fact that the only "public health
department" created by law in this State is the State Depart-
ment of Public Health created by Article 4414a, V.A.C.S., and
which consists of the State Board of Health, the State Health
Officer and his administrative staff, and the further fact
that the State Department of Public Health is given "general
supervision and control of all matters pertaining to the

health of citizens of this State, as provided herein,"
(Article 4419, R.C.S.) we think the Legislature in using
the words "public health departments" could only have meant
the State Department of Public Health. While provision is
made by the statutes for county health officers (Articles
4422-4423) and city health officers (Articles 4424-4425),
there is no statute making any provision for a county or
city department of Health. Furthermore, such officers are
officers of the State. White v. City of San Antonio, 94
Tex. 313, 60 S.W. 427. Each of such officers is amenable
to the rules and regulations of the State Board of Health.
(Articles 4427-4432, R. C. S.) This being true, it might
logically be said that such officers are members of the
administrative staff of the State Health Officer. In any
event, we think the State Health Department is the only
department that could have been included in the language of
Article 705c. We are therefore of the opinion that the
State Department of Public Health is authorized by this
act to establish such rules and regulations requiring such
laboratory tests for syphilis and gonorrhea as that depart-
ment deems essential to the execution of the intentions of
the set.

The same rule applies to the delegation of law-
making power to "local lawmaking bodies." We know of no
local lawmaking bodies within this State which could reason-
ably be held within the purview of this provision, other
than the local governing bodies of incorporated cities, towns
and villages, who have restricted powers to enact legislation
(ordinances) affecting their respective jurisdictions. And
the power of the Legislature, to delegate to cities, towns
and villeges, its authority to make laws for the protection
of the public health, is amply upheld by the opinion of the
San Antonio Court of Civil Appeals in the case of Hanzel,
et al., v. City of San Antonio, et al., 221 S.W. 237;

"If the ordinance that is assailed by appellants
is one enacted, not for the purpose of the collection
of taxes or public revenues, but for sanitary purposes
and protection of the health of the public, it is not
unconstitutional. The power to enact laws for these
purposes is inherent in every sovereignty, and can be
delegated by such sovereignty to agencies created by
it for such purposes. The power to require licenses for
the protestion of the public health, decency, and morals,
may be exercised by the state directly, or it may be
done indirectly through a municipal corporation created
by the state and clothed with such authority. Cooley
on Taxation, c. 19, pp. 1125-1138."

This is an exhaustive opinion on this question, citing

many authorities. Writ of error was refused by the Supreme Court. To the same effect is our Opinion No. 0-720, a copy of which is attached hereto.

It is our opinion that under the provisions of said Article 705c, and under the general police power, the governing bodies of incorporated Texas cities, towns and villages are authorized to enact ordinances designed to effectually prevent the spread of venereal diseases (provided, of course, that such ordinances do not conflict with the terms of said article), and that such ordinances may specify and require any reasonable tests for the detection of syphilis and gonorrhea.

QUESTION NO. 4: What is meant by the provision, in said Section 3, that the said authorities may adopt a plan for the registration of the physician's certificate and in lieu thereof, issue a registration card?

"Registration is the act of making a list, catalogue, schedule or register. The word 'registration' is an ordinary one. It is used in a generic sense, not technical. . . . ." In re Supervisors of Election, 1 F. 1, 5. This act, therefore, gives to the governing body of every incorporated city, town and village the power to pass ordinances adopting a plan for the making of a list, catalogue, schedule or register of physicians' certificates (commonly called "health cards") issued to its constituents, under the provisions of the act, and issuing in place of each such certificate a card "to show that the person named thereon has complied with all the provisions of this Act." The mechanics of the registration and the issuance of the cards is left to the discretion of the city commissioners or alderman, as the case may be.

QUESTION NO. 5: Can the physician be fined for not giving an actual, thorough examination where he issues a certificate over the telephone or to the employee in person without an examination?

This question is answered in the negative by our Opinion No. 0-1585, cited above and attached hereto.

QUESTION NO. 6: Can the employer be convicted (1) if he hires any person without a health certificate, or (2) hires any one with a health certificate knowing that said employee is infected, or (3) hires an employee who received a health certificate without any examination at all? (4) Can the employee be convicted even though he or she has a certificate, if it be proven that said employee did not take an actual physical examination, at the time knowing that he or

O-4525

O-4533

she had a contagious disease?

Since this question is really four questions, we have taken the liberty of subdividing it and numbering its component parts, and will answer each by number.

Number (1) is made an offense by the plain provisions of the Act.

Number (2) is also made an offense under the Act, provided the employer knows that the employee is infected with a transmissible condition of an infectious or contagious disease.

Numbers (3) and (4) are not made penal offenses by any provision of this Act. But, relative to question number (4) we respectfully call to your attention Article 704, Section 1, Penal Code of 1925, as follows:

"Whoever violates any provision of this article shall be fined not less than five nor more than fifty dollars:

"1. No person infected with a venereal disease shall knowingly expose another to infection with any venereal disease, or perform an act which exposes another person to infection with such disease.

". . ."

Yours very truly

ATTORNEY GENERAL OF TEXAS

s/ W. R. Allen

WRA:MBR                    By                    W. R. Allen
Enclosures                                       Assistant

APPROVED JUNE 13, 1942
s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

This opinion considered and approved in limited conference.